UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,           : Docket #24-mj-1732

                    Plaintiff,      :

    -against-                       :

ANTHONY MICHAEL SOUZA,              : New York, New York
                                      May 1, 2024
                    Defendant.

--------------------------------:

                    PROCEEDINGS BEFORE
              THE HONORABLE BARBARA MOSES
              UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:      UNITED STATES ATTORNEY'S OFFICE
                    SOUTHERN DISTRICT OF NEW YORK
                    BY:  GETZEL BERGER, ESQ.
                    1 St. Andrew's Plaza
                    New York, New York 10007

For Defendant:      ALLEN OVERY SHEARMAN STERLING
                    US LLP
                    BY:  EUGENE EDWARD INGOGLIA, ESQ.
                    1221 Avenue of the Americas
                    New York, New York 10020

Transcription Service: Marissa Lewandowski
                    Phone:  (631) 813-9335
                    E-mail:marissamignano@gmail.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

INDEX

## E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None | | | | |

## E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|----|----|-----------|
| None | | | | |

THE DEPUTY CLERK: The Court now calls United States of America v. Anthony Michael Souza, Case Number 24-Mag-1732.

Counsel, please make your appearances for the record.

MR. BERGER: Getzel Berger for the United States. With me at counsel table is FBI Special Agent Jeremy Gale.

Good afternoon, Your Honor.

THE COURT: Agent, Counsel, be seated.

MR. INGOGLIA: Eugene Ingoglia from A&O Shearman. And with me is Mr. Souza.

THE COURT: Mr. Ingoglia, welcome. Be seated.

Mr. D'Souza, I am -- Mr. Souza, I'm sorry. I am Magistrate Judge Moses. For the record, please, can you confirm that you speak and understand English?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Thank you.

May I have the date and time of the defendant's arrest, please?

MR. BERGER: Around 8:00 this morning.

THE COURT: May 1st at 8:00 a.m. Thank you.

Mr. Souza, the purpose of today's proceeding is to advise you of certain rights that you have, to inform you of the charges against you, to consider whether counsel shall be appointed to represent you at Government expense, and to decide under what conditions, if any, you shall be released pending trial.

I'm going to begin with your constitutional rights. You have the right to remain silent. You are not required to make any statements to law enforcement agents. Even if you've already made statements to the authorities, you do not need to make any further statements. Any statements that you do make can be used against you.

You have the right to be released, either conditionally or unconditionally, pending trial, unless I find that there are no conditions that would reasonably assure your presence at future court appearances and the safety of the community.

If you are a foreign national, you have the right to request that a consular officer from your country of origin be notified of your arrest. In some cases, a treaty or other agreement may require the US government to give that notice whether you request it or not. And I tell everybody this, even

as, in your case, I have no reason to believe that they're a foreign national.

You have the right to be represented by an attorney during all court proceedings, including this one, and during any questioning by the authorities. If you cannot afford an attorney, I will appoint one today to represent you.

Ms. Kay, do we have a financial affidavit?

THE DEPUTY CLERK: Yes, Your Honor.

THE COURT: Thank you.

My deputy has handed me your financial affidavit, Mr. Souza, which serves as your application for the appointment of counsel at Government expense. Let me just hold that up and make sure that's your signature.

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. This is submitted under penalty of perjury, meaning that if you make any intentionally false statements on the form, you could be charged with perjury.

So before I ask you to raise your right hand and swear to it, do you want to review it? Make any changes on it? Add anything to it?

THE DEFENDANT: No, Your Honor.

THE COURT: Raise your right hand.

Do you solemnly swear or affirm that the statements made on your financial affidavit are true and correct?

THE DEFENDANT: I swear.

THE COURT: Reviewing the form now.

All right. I'm approving your application. And, Counsel, you are appointed.

Let us now turn to the charging instrument, which in this case is a Complaint. It has not yet been sworn out. So if I could have Agent Gale step up with a clean copy, and if I could have the assistant US attorney tell me what needs to be changed before it gets sworn out.

MR. BERGER: Thank you. Your Honor is well acquainted with the perils of quick drafting after probable cause arrest. There's a -- defense counsel accurately pointed out that there's a typo, which is mine, not Agent Gale's. It says twice 2025, where it should say 2024. That's it.

THE COURT: And give me those paragraphs, please.

MR. BERGER: One and two. So the end of the first line in each.

THE COURT: So in paragraph 21, where it says -- oh, I see. Where it says April 25, 2025,

that should be 2024.

MR. BERGER: Correct.

THE COURT: And the same on the first line of paragraph 2.

MR. BERGER: Precisely.

THE COURT: All right. So if you have a clean copy there --

MR. BERGER: I do.

THE COURT: -- Agent Gale should make those changes in handwriting and initial them. And then he can step up and bring the document with him.

You can just step up right to my deputy's right-hand side. If you have a blue pen, I'd appreciate you signing the Complaint in a blue pen. Thank you.

You can hand that to Ms. Kay. You can raise your right hand.

Agent Gale, do you solemnly swear or affirm that the statements made in the Complaint just executed in my presence are true and correct?

AGENT GALE: I do, Your Honor.

THE COURT: Thank you. Ms. Kay.

All right. Mr. Ingoglia, do you have a copy of the Complaint, and have you reviewed it with your client, and do you waive its detailed public

reading?

MR. INGOGLIA: We do have it. We reviewed it and we waive its public reading.

THE COURT: Thank you very much.

Mr. Souza, because you have been charged by Complaint, this is not a grand jury indictment. In other words, you have the right to a preliminary hearing. At the preliminary hearing, the Government will have the burden of establishing that there is probable cause to believe that the crime for which you are being charged was committed and that you are the person who committed it.

If you are in custody, you have a right to that preliminary hearing within 14 days. If you are not in custody, you have a right to that preliminary hearing within 21 days. However, if you are indicted before the date of your preliminary hearing, or if the Government files an information against you, a preliminary hearing will be held. I will set a preliminary hearing date at the conclusion of these proceedings.

I will also review for you the charges against you. Although you waived a detailed public hearing -- public reading, I should say, I will state for the record that you are charged in

Count One with receipt and distribution of child pornography in violation of Title 18 of the United States Code, Sections 2252A(a)(2)(B) and (b)(1).

You are charged in Count Two with possession of child pornography in violation of Title 18 of the United States Code, Section 2252A(a)(5)(B) and (b)(2).

Let us now turn to conditions of release. I have a Pretrial Services report which recommends release under a variety of conditions. And counsel, I hope, have met and conferred. And is there agreement or is there not agreement?

MR. BERGER: Unfortunately, there is not. The Government will seek detention and understand that the defense will make a bail application.

THE COURT: Okay. This is a defendant with no history of any known crimes, correct?

MR. BERGER: Correct.

THE COURT: Okay.

MR. BERGER: Your Honor, the Government moves for a detention hearing under 18 U.S.C. 3142(f)(1)(E) because the defendant is charged with felonies that involve minor victims. And under 18 U.S.C. 3142(e)(3)(E), there is a presumption that no condition or combination of conditions will

reasonably assure the appearance of the defendant and the safety of the community.

THE COURT: Thank you for that. Hold on for a minute. Let me explain to the defendant what's going to happen next.

The Government has asked that you be detained without bail pending trial. The Government is entitled to make the request because of the nature of the charges against you. I must, therefore, determine whether there is any condition or combination of conditions of release that will adequately protect two things: Both the safety of the community and your appearance in court when required. I suspect that it is the first factor that the Government is primarily concerned about in a case of this nature.

There are a variety of factors that I am required to consider when making this decision, including the nature and circumstances of the offense charged, the weight of the evidence against you, your own history and characteristics, and the nature and seriousness of the danger to persons in the community.

This is what's known as a presumption case. There is a presumption, because of the nature of the

charge here, that no condition of release will reasonably assure the safety of the community. However, the presumption is rebuttal, and the Government ultimately bears the burden of establishing either by clear and convincing evidence that you are a danger to the community or by a preponderance of the evidence that you are a flight risk. And because the Government bears the burden, I will hear first from the Government, and then your counsel will have an opportunity to argue as well.

Mr. Berger, now you may tell me what you want to tell me.

MR. BERGER: Thank you. And Your Honor is correct. We are focusing only on danger. We do not argue that the defendant is a risk of flight.

THE COURT: Okay.

MR. BERGER: And Your Honor is also correct that, as far as we know, he has no convictions for this or any other conduct.

I do want to briefly touch on four points: One is the nature of the conduct. The second one is the strength of the evidence. Then there's the defendant's easy access to children. And fourth, evidence that the defendant may have, although I stress "may have," crossed a line into hands-on

offenses.

Starting with the nature of the conduct, this is not a case where someone passively sat at a computer and viewed a video or an image that contained child pornography. The defendant actively sent and received dozens of videos of child pornography to and from multiple people. These videos involve children as young as six years old. And this was not a solitary activity. Just from what -- very early returns of the -- on the returns or the results of this morning's search warrant was, for example, a chat with the defendant participated with 70-plus other people. And that's in addition to his individual chats. And as I said, these videos involved very, very young children.

Focusing on the strength of the evidence, as laid out in the Complaint, the defendant received child pornography from another individual whose phone was later seized by the FBI. Later on, he sent child pornography to an FBI agent who was operating that account. He admitted to this conduct this morning before he was arrested. He voluntarily allowed the FBI to view the contents of his phone, where they saw more child pornography. And they also saw the account that he used to communicate

with the FBI agent and shared that child pornography. He admitted that --

THE COURT: And you have his phone?

MR. BERGER: Pardon?

THE COURT: And you have his phone?

MR. BERGER: Exactly. He admitted that he had people over in his house to view child pornography. And he confirmed that both of the -- that his Snapchat account and his Telegram account on that phone were his.

Focusing on the third aspect, which is the defendant's access to children. It appears that defendant primarily, or perhaps solely, works in an educational or -- setting or settings that have --

THE COURT: Sure. I understand that he works in the public schools with elementary-age children. But as the defendant himself recognized in his application for appointment of counsel, he probably won't have that job tomorrow. And that's something that we can set conditions around, correct?

MR. BERGER: That's a fair point, yes. But I do want to point out that he lives a stone's throw away from a school and a playground.

THE COURT: Everybody in New York lives a

stone's throw away from a school.

MR. BERGER: Also fair.

THE COURT: We are a stone's throw away from three or four schools, even as we sit here today in Courtroom 5A.

MR. BERGER: Of course.

THE COURT: What else?

MR. BERGER: So I'll turn to the fourth aspect of this, which is the indications of potential hands-on conduct. And I want to stress that it's early days --

THE COURT: And it's not charged.

MR. BERGER: And the conduct is not charged, of course. And I don't want to cast aspersions, and I wouldn't do that lightly.

But there is evidence that -- and I can give the Court more details, if the Court would like -- that he has hosted at least one sex party at his house where a minor had sex with an adult. Again, from --

THE COURT: You can't just say that without telling me how you know that.

MR. BERGER: Yes. Another person was arrested and is currently facing charges in this district. And following his arrest, he identified

the defendant. And as part of a search warrant incident to that arrest, that person's journals were seized, and those journals named the defendant by the first name, not his last name, as a person who hosted a sex party. And the person whose journals were seized actually said that he had sex with a minor, a 16-year-old, at the defendant's house.

THE COURT: So just to be clear, and I am playing devil's advocate with you here, the party allegedly was at the defendant's home. The minor was 16, and the person -- the adult who had sex with the minor was not the defendant. It was somebody else?

MR. BERGER: Correct, correct.

THE COURT: All right.

MR. BERGER: Additionally -- this is from this morning -- a quick review of his phone showed that the defendant sent photos of one or two children, fully clothed, I should say, to -- in a school setting --

And if, Your Honor, would give me one second.

-- in an educational setting that the defendant confirmed was a school that he worked in. So children in the school that the defendant worked

in, and the defendant sent that to at least one, possibly two people with whom he had also shared child pornography.

THE COURT: So let me make sure I follow the storyline here. You're suggesting that the defendant took pictures or had in his possession innocent pictures of children with whom he works in a school setting that he forwarded for unknown purposes outside of the school setting to folks that he previously swapped child pornography.

MR. BERGER: Correct. And when asked about it, "Why would you send that," the defendant said something to the extent of, "To brag about it." That could be brag about access to children, brag about conduct. I don't want to say that or -- which one it is, but these are people that he actively shared child pornography with in that --

THE COURT: But these pictures themselves were not pornographic in any way?

MR. BERGER: Correct.

THE COURT: Okay.

MR. BERGER: Additionally, the defendant maintained a Snapchat account where he had posted a selfie with the caption "Who is meeting me at home," with a devil emoji, which it's my understanding that

the devil emoji is often used to indicate interest in either child pornography or sexual contact with children.

Again, I'm not saying that we have evidence that anything actually happened or that somebody was actually coming over, but that's another data point that points to potential hands-on contact. And additionally, his Telegram chats with the FBI agent indicated that he was having --

THE COURT: The FBI agent posing as someone with whom he had previously shared the child pornography?

MR. BERGER: Correct. Indicated that he was having someone over last week. He sent photos of that person. We don't know the exact age, and it could be that that person is not a minor. So, again, I want to be careful and --

THE COURT: Wait. So we know or we think we know -- you know or you think you know the person who visited the defendant at home?

MR. BERGER: We know a first name right now.

THE COURT: At least we know -- and you can't tell from the picture whether this is a minor or an adult?

MR. BERGER: Well, I'll represent that I have not viewed the photos, but I'm relying on my agents.

THE COURT: Okay. So I'm presuming now that this is not obviously a child.

MR. BERGER: No. If we had to give an age range to it, we would say 16 to 25. And just in terms of full disclosure, this morning, the defendant told the agents that he did have that person over, but that that person told him that he was 18.

THE COURT: 18?

MR. BERGER: Yes.

THE COURT: Okay.

MR. BERGER: Again, these are all data points --

THE COURT: You don't yet know what's behind that?

MR. BERGER: Precisely.

THE COURT: All right.

MR. BERGER: As I said, it's early days. And for now, he's charged only with the child pornography offenses. I'm not saying there's more coming down the pike, but we just don't know at this point.

THE COURT: Okay.

MR. BERGER: But respectfully, there's enough there to indicate that the defendant, this is something he's done regularly. He's done it with others. He's at least talked about -- well, I shouldn't say that. He's at least -- as I just said, there are data points that indicate potential hands-on conduct. He's hosted a sex party, allegedly, where a minor was there and had sex with an adult. And, at this point, we would take the position that he's a danger to the community in any form other than detention.

THE COURT: Mr. Ingoglia.

MR. INGOGLIA: So, Judge, we recognize there's a presumption, but we think it can be overcome by the conditions, the extensive conditions, that Pretrial's recommended. I want to point out, and Your Honor has -- I won't repeat the things that you've pointed out already, but he has no criminal history. Family is here. Their family is in the courthouse. He's a longtime New Yorker. He's been here 18-plus years. NYU grad.

THE COURT: Would you like to introduce the defendant's family members?

MR. INGOGLIA: I don't think so. I don't

think -- some of them are out in the court hallway.

THE COURT: Well, the reason I ask is that one of the issues which is on my mind as an additional barrier to conditions of release here is that the defendant lives at the moment in a group apartment or an apartment with multiple roommates about whom we know nothing. And even if I were to restrict the defendant to, let's say, a single laptop or a single phone, as Pretrial recommends, he would have access physically, presumably, to other people's devices.

So I haven't made up my mind about anything yet. But someone in your position representing a defendant with this sort of charge sometimes says to me, Your Honor, the defendant could live with, for example, his mother at a certain address or his uncle at some other address, thus removing that particular brand of risk.

MR. INGOGLIA: Understood. Understood. One of the people that he lives with is his fiancee, who's in the courtroom now. I don't -- but if that doesn't sufficiently address Your Honor's concern --

THE COURT: Well, but aren't there are two other roommates?

MR. INGOGLIA: There are; is that right?

Yeah.

THE COURT: So that is a concern to me.

MR. INGOGLIA: I understand. So let me come back to that.

THE COURT: Okay.

MR. INGOGLIA: And, look, I mean, I'm standing here saying whatever conditions Your Honor imposes, we're prepared to meet --

THE COURT: I understand.

MR. INGOGLIA: -- including -- and I think if you have a restriction on no unsupervised access --

THE COURT: Given the nature of the charges, access to anybody's devices is obviously front of mind here.

MR. INGOGLIA: Understood. So I can consult with the family and with my client to propose a particular spot because I think everyone's very keenly focused on --

THE COURT: Why don't you run through the other points that I'm sure you were planning to make to me, and then I will give you a few moments to consult with the family.

And, now, needless to say, if somebody steps forward and says, I'll take him, and

furthermore, that I will serve as a third-party custodian, which, for those family members who may be here, means that you would have a responsibility to the Court to enforce the terms of bail and report to Pretrial Services if the defendant violates any of those terms.  If you have someone who's willing to host the defendant and serve as a custodian in that way, needless to say, they would need to identify themselves --

MR. INGOGLIA:  Understood.

THE COURT:  -- on the record.

MR. INGOGLIA:  Understood.  So a couple more points, and then I'll take advantage of your offer and consult.  He was cooperative with law enforcement, as you heard, and willingly turned over all those devices.

The concerns -- the restrictions proposed by Pretrial include mental health, limitations on (inaudible), no unsupervised association with minors, reporting his arrest to his employers.  As Your Honor pointed out, that is going to result in the end of his employment, but we're obviously prepared to do that.  And if he does all those things, I think you've addressed the concerns with the caveat that you've just raised and that I'll

address outside the courtroom on these -- on the may haves --

THE COURT: Well, the Adam Walsh Act requires a curfew, as I understand it, at a minimum.

MR. INGOGLIA: Yes. And we're comfortable with the curfew and with the monitoring.

THE COURT: Well, the curfew doesn't actually -- in my mind, it's not a solution that matches the problem here very well --

MR. INGOGLIA: I don't disagree.

THE COURT: -- because the nature of the crime isn't necessarily confined to any particular hours of the day or night. But if there is a concern about potential hands-on contact, I would be interested in knowing where the defendant is going to be physically, and who else is going to be there, and whether that person could serve as a --

MR. INGOGLIA: Understood.

THE COURT: -- as a third-party custodian.

MR. INGOGLIA: So that's the part that I'll have to address with family.

THE COURT: All right. Anything else you want to tell me and then we'll recess for a few minutes?

MR. INGOGLIA: No. I think you've covered

it. I think that's fine.

THE COURT: All right. So ladies and gentlemen, we will stand in recess for hopefully not more than about five minutes.

Counsel, you'll let Ms. Kay know when we're ready to proceed.

(A recess was taken.)

THE DEPUTY CLERK: We're now back on the record in the matter of the United States of America versus Anthony Michael Souza.

THE COURT: Thank you, Ms. Kay.

Mr. Ingoglia, do you have a report for me?

MR. INGOGLIA: I do. So, Judge, I have two possible solutions. And I offer them, and I say this with the spirit of what satisfies the Court is what we're going to consent to. So we're trying to get to a solution.

One possibility is he currently lives in the apartment that you mentioned. It has four people, including himself and --

THE COURT: I'm not happy with that living situation. It's four young men, correct? Including the defendant's girlfriend or fiancee?

MR. INGOGLIA: Correct.

THE COURT: Yeah, I'm not happy with that.

MR. INGOGLIA: Okay. So password protections, anything like that, not satisfying your concern?

THE COURT: I think there are too many weak spots there.

MR. INGOGLIA: Okay. So the defendant's mom is here and is in the courtroom. She doesn't live in the Southern District of New York. She lives in the Albany area. I've spoken with her. She's prepared to act in the custodial capacity you talked about. She's willing to answer questions --

THE COURT: Did you explain to her what that means?

MR. INGOGLIA: I've explained that she would have to take responsibility for making sure that he's satisfying the conditions, and in particular, with respect to the use of electronic devices, either a computer or phone or other. And she has a phone that will be with her. Her younger son has a phone that would be with him. And then my understanding is that there's a -- the only other device in the house is a gaming system, which I believe can be -- we can address it. Either we can lock it away or we can make sure that it doesn't have any kind of communication ability.

I'm not familiar enough with the gaming device, as I sit here right now, to tell you which of those things will solve the problem. But I'm prepared to work with whoever we need to work with to make sure that they're satisfied.

THE COURT: All right. Is the defendant's mother in the courtroom?

MR. INGOGLIA: She is. Her name is Dea, Dea Souza.

THE COURT: Ma'am, come forward. You can just step up here. The acoustics in the courtroom are not very good, so I'm going to ask you to step up next to the attorney here so that I can help you -- so that I can hear you.

Tell me your first and last name.

MS. SOUZA: My name is Dea, D-E-A. Same last name, Souza, S-O-U-Z-A.

THE COURT: And you are the defendant's mother?

MS. SOUZA: I am.

THE COURT: And having heard the nature of the charges against him and having been given some idea of what a third-party custodian is --

MS. SOUZA: I have -- I don't know.

THE COURT: The charges are child

pornography.

MS. SOUZA: Okay.

THE COURT: That's the nature of the charges here. So my concern, and I'll just be very candid with you, that, on the one hand, it is my obligation, which I take very seriously, to release defendants prior to trial, rather than to detain them in prison, if I can do so safely. So I'm looking for a way to do that here.

On the other hand, the Government has presented to me a variety of reasons why, in their view, it would not be safe to allow your son to remain at liberty pending trial, particularly not in the apartment where he currently resides with other young men.

So one possible solution, which your son's lawyer is exploring, is to have a set of conditions under which your son would be required to live with you --

MS. SOUZA: Okay.

THE COURT: -- and you would be what's known as a third-party custodian, i.e. you would be made aware of all of his bail conditions, including the restrictions on his use of electronic devices because the allegation here is that he used his

phone and/or his computer to send child pornography and receive child pornography to others. So his devices would be limited and monitored by the Pretrial Services Department. And you would be asked to make sure that he did not have access to any other devices in the household. Other family members, for example, would be asked to password protect their devices and not give Mr. Souza any access to it.

Does that make sense to you?

MS. SOUZA: Understood.

THE COURT: Can you tell me who else lives in the home?

MS. SOUZA: My younger son.

THE COURT: And how old is he?

MS. SOUZA: He is 29.

THE COURT: Okay. Is he employed?

MS. SOUZA: He is.

THE COURT: Okay. And are you employed out of the house?

MS. SOUZA: Yes, I am.

THE COURT: So both you and your younger son are out during the day?

MS. SOUZA: No. My younger son works overnight.

THE COURT: He works the night shift, and you work the day shift?

MS. SOUZA: Yes.

THE COURT: What line of work are you in, ma'am?

MS. SOUZA: I'm a nurse. I do a lot of different things. I'm a nurse, Uber driver, babysit.

THE COURT: And your younger son?

MS. SOUZA: My younger son is a security guard.

THE COURT: A security guard working the night shift?

MS. SOUZA: Yes, he works overnights.

THE COURT: Okay. Is there anything else that you would like to tell me with regard to your son's situation, and specifically as to whether it would be safe to release him pending trial?

MS. SOUZA: It would definitely be safe for him to come home with me.

THE COURT: It's difficult -- I'm a mother myself, and I understand that it's very difficult to put yourself in a position where if you saw your son violating his bail conditions, you would be expected to pick up the phone and call his Pretrial Services

officer and report that misconduct.

Are you prepared to do that?

MS. SOUZA: Yes, I am.

THE COURT: Thank you very much.

Are there any other questions that counsel would like me to ask Ms. Souza?

MR. BERGER: No, Your Honor.

THE COURT: Okay. You can go ahead and sit down.

Counsel, anything else?

MR. INGOGLIA: No, Judge.

THE COURT: Any rebuttal?

MR. BERGER: No, Your Honor. We -- although, if the Court were inclined to release the defendant living in Albany, it sounds more acceptable to the Government, as well, than living in the city. And the only thing we would add to the list of conditions that Pretrial suggested is two cosigners by financially responsible people. We would ask for 50,000.

THE COURT: All right. Thank you very much. I appreciate everybody's input. As I said to Ms. Souza, this is a difficult case. It is a presumption case, and the nature of the charges are heinous. On the other hand, it is my obligation,

which I take seriously, to set bail conditions so as to prevent a defendant from being detained prior to trial, if I can do so, consistent with the Bail Reform Act and, in this case, the Adam Walsh Act as well.

Having weighed all of the information that I have been given here, I find that there are conditions which I can impose that will reasonably assure the defendant's appearance in court, when required, and the safety of the community. And the conditions are these: The defendant will sign a bond in the amount of $40,000. $40,000. The bond must be cosigned by two additional financially responsible persons acceptable to the US Attorney's Office.

Whether or not the defendant's mother turns out to be a cosigner -- I make no prediction as to that -- the defendant's mother, Ms. Dea Souza, will serve as the defendant's third-party custodian for which, unfortunately, there's no salary, but there are responsibilities. And the responsibilities are, in effect, to keep an eye on your son, make sure that he complies with his bail conditions, and call his Pretrial Services officer if he doesn't.

The defendant's travel will be restricted

to the Southern and Eastern Districts of New York, and the Northern District of New York, and points in between only for purposes of travel.

The defendant will be subject to pretrial supervision as directed by Pretrial Services, including mental health evaluation and treatment, if and as directed by Pretrial. The defendant will submit to a urinalysis. If positive, Pretrial may add a condition of drug testing and/or treatment.

The defendant will reside at his mother's home in Albany, New York, where he will be subject to home incarceration.

That means, Mr. Souza, you will not be leaving -- is it an apartment or a house, ma'am?

MS. SOUZA: It's a house.

THE COURT: That's better. You will not be leaving the house, except for specified permitted trips, for example, to see your lawyer or to go to court. And that home incarceration will be monitored electronically by the technology that will be directed by Pretrial Services.

The defendant is to have no contact with any known victims, i.e. any of the children depicted in any of the pornographic videos or images at issue here.

The defendant is to have access in the home to only one phone and one computer, and he will authorize monitoring of his Internet usage by Pretrial Services on those devices.

The defendant is to surrender all other Internet-capable devices to Pretrial Services. All of the other individuals who live in the household are directed to password protect any and all Internet-enabled devices which they possess and not to allow the defendant access to their devices.

If the defendant can find remote work that he can do, he is certainly permitted and encouraged to do that, but he is not to accept or perform any work in any job, in person or remote, which involves regular contact with minors.

In addition, rounding out the list provided to me by Pretrial Services, the defendant shall not view, purchase, possess or distribute any form of pornography depicting sexually explicit images of minors.

The defendant will have no intentional and/or prolonged unsupervised contact, directly or indirectly, with any child under the age of 18, even relatives, without the prior permission of the Pretrial Services officer. And the Pretrial

Services officer under that -- if they do get permission, they may well require a chaperone for any such visits.

And the defendant shall either resign from his employment or disclose these charges to his employer and allow Pretrial Services to verify either that he has resigned or that he has made that disclosure.

You don't necessarily have to decide this yet, Mr. Berger, but I am inclined to detain the defendant until all of these conditions are met which, among other things, will give you an opportunity, if you wish, to go to the Part 1 judge if you feel that these conditions are inadequate, but I feel that they are adequate under the circumstances.

MR. BERGER: If the Government agrees that detention is appropriate until the conditions are satisfied, we can all make sure that any cosigners are interviewed promptly.

THE COURT: Okay. So you get out, Mr. Souza, when these conditions are satisfied, which includes finding two folks who are willing to cosign your bond and having any electronic monitoring set up in your mother's home. If

everybody works together cooperatively on this, it may only be a day or two, but I can't predict that as I sit here today.

So that then brings us to the question of the preliminary hearing. What day shall I set for the preliminary hearing, Counsel? You want to wait until the 30th day?

MR. INGOGLIA: Yes, Judge. I think that's all right.

THE COURT: All right. So I will set the preliminary hearing down for 30 days from today, which is May 31st of 2024.

And have I missed anything, Mr. Berger?

MR. BERGER: Nothing from the Government.

THE COURT: Mr. Ingoglia?

MR. INGOGLIA: Judge, you haven't missed anything. I know that I can -- we have people here today who could be prepared to be interviewed as soon as now.

THE COURT: Great. It's only 4:15. Discuss that with Mr. Berger. And if they can be interviewed today, they will be interviewed today.

MR. INGOGLIA: Thank you, Judge.

THE COURT: All right. We will be adjourned.

C E R T I F I C A T E

I, Marissa Lewandowski, certify that the foregoing transcript of proceedings in the case of UNITED STATES OF AMERICA v. ANTHONY MICHAEL SOUZA, Docket #1:24-mj-01732-UA, was prepared using digital transcription software and is a true and accurate record of the proceedings.

Signature *Marissa Lewandowski*

Marissa Lewandowski

Date:      July 9, 2024